UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NASI BEN-YAISRAEL #882925,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Hon. Hala Y. Jarbou

Case No. 1:19-cv-567

## REPORT AND RECOMMENDATION

This matter is before the Court on Ben-Yaisrael's petition for writ of habeas corpus.   In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner habeas petitions, the undersigned recommends that Ben-Yaisrael's petition be denied.

## BACKGROUND

As a result of events that occurred on or about January 2, 2016, Petitioner was charged with open murder and possession of a firearm during the commission of a felony.   Several individuals testified at Petitioner's jury trial.   The relevant portions of their testimony are summarized below.

1

**Amanda Kuhens**

On the evening of January 1, 2016, Petitioner rented a room at a Red Roof Inn located in Kalamazoo, Michigan.  (ECF No. 5-4, Trial Transcript, September 27, 2016, PageID.294-99).    As of this date, Kuhens was employed as the General Manager of this Red Roof Inn.   (*Id.*, PageID.294-95).   As General Manager, Kuhens was responsible for maintaining the facility's security system.   (*Id.*, PageID.296). Kuhens subsequently retrieved from the facility's security system footage of events occurring on the evening of January 1, 2016, through the following morning.   (*Id.*, PageID.297).    Kuhens provided this information to the Kalamazoo Sheriff's Department.[1]   (*Id.*).

**Nichael Todd**

On the evening of January 1, 2016, Todd was riding around with Tory Cooks and Deshontae Ellis.    (ECF No. 5-4, Trial Transcript, September 27, 2016, PageID.304-5).    At some point, Ellis drove to the Red Roof Inn to pick up Tyshaun Anderson and Essence Bates.   (*Id.,* PageID.305-8).    Ellis then proceeded to a nearby Applebee's to pick up Lakaria Washington.   (*Id.*, PageID.308-9).    Anderson and Bates were not happy that Washington joined the group and asked Ellis to drive them back to the Red Roof Inn.   (*Id.*, PageID.309-11).

---

[1] Portions of this footage were discussed during Kuhens' testimony and introduced as exhibits.   The record submitted to the Court, however, does not include the footage in question.

When Ellis arrived at the Red Roof Inn there were "a bunch of guys" standing outside.  (*Id.*, PageID.311-13).   Ellis parked his car at which point Anderson, Bates, and Washington got out of the vehicle and began fighting.  (*Id.*, PageID.312-14). Ellis and Cooks then attempted to stop the fight, at which point five to ten men, one of whom was carrying a gun, "ran up" and started fighting Ellis and Cooks.  (*Id.*, PageID.314-17).   The man carrying the gun was wearing black pants and a grey hooded sweatshirt with "Eastside Poppers" printed on the front.  (*Id.*, PageID.315-20).   Ellis attempted to extricate himself from the fight by returning to his vehicle, but was shot as he attempted to do so.  (*Id.*, PageID.316-17).   Todd did not see who fired this shot, but did observe that the man wearing the "Eastside Poppers" sweatshirt was standing at the driver's side of the vehicle where Ellis was shot.  (*Id.*, PageID.318-19).

**Toryano Cooks**

On the evening of January 1, 2016, Cooks was riding around with Nichael Todd and Deshontae Ellis.   (ECF No. 5-4, Trial Transcript, September 27, 2016, PageID.323-26).   At some point, the group travelled to the Red Roof Inn to pick up Tyshaun Anderson and Essence Bates.  (*Id.*, PageID. 325-27).   Ellis then drove to a nearby Applebee's to pick up Lakaria Washington.  (*Id.*, PageID.328).   Shortly thereafter, Anderson and Bates requested to return to the Red Roof Inn.  (*Id.*, PageID.328-29).    There were no guns in Ellis' vehicle that evening.  (*Id.*, PageID.333).

3

When Ellis arrived at the Red Roof Inn there were "a whole bunch of guys" standing outside.  (*Id.*, PageID.329-30).  Once Ellis stopped his vehicle, Anderson, Bates, and Washington "got out the car . . . and then it was just a big riot."  (*Id.*, PageID.330-31).  In the course of this fight, a man wearing a black hooded sweatshirt pointed a gun at Cooks.  (*Id.* PageID.331-34).  Shortly thereafter, Cooks heard a gunshot, but could not see who fired it.  (*Id.*, PageID.332-33).

**Lakaria Washington**

On the evening of January 1, 2016, Washington asked Deshontae Ellis to pick her up at a local Applebee's.  (ECF No. 5-4, Trial Transcript, September 27, 2016, PageID.339-41).  When Ellis arrived, Tory Cooks, Nichael Todd, Tyshaun Anderson, and Essence Bates were also in the vehicle.  (*Id.*, PageID.341).  Nobody in the vehicle possessed a gun.  (*Id.*, PageID.346).  Ellis then drove to the Red Roof Inn to drop off Anderson and Bates.  (*Id.*, PageID.342-44).  Upon arriving at the Red Roof Inn, Washington got out of the vehicle, at which point she was attacked by Anderson. (*Id.*, PageID.344-45).  A group of men then began "crowding around the car," at which point Washington got back inside the vehicle and laid down in the back seat. (*Id.*, PageID.345-47).  While laying in the back seat, Washington heard a gunshot. (*Id.*, PageID.347).

**Tyshaun Anderson**

On the evening of January 1, 2016, Anderson went to the Red Roof Inn to "hang out" with Petitioner, Essence Bates, and Glendon Sullivan. (ECF No. 5-4, Trial Transcript, September 27, 2016, PageId.353-55). Later that evening, Deshontae Ellis, Tory Cooks, and Nichael Todd arrived at the Red Roof Inn to pick up Anderson and Bates. (*Id.*, PageID.355-58). Ellis drove the group to Applebee's to pick up Lakaria Washington at which point the group returned to the Red Roof Inn. (*Id.*, PageID.358-60). Upon their return, Anderson, Bates, and Washington exited the vehicle and began fighting. (*Id.*, PageID.360-61). At this point, a group of men approached Ellis' vehicle. (*Id.*, PageId.361-62). Petitioner and Sullivan, both of whom were carrying guns, were part of this group. (*Id.*, PageID.361-63). Petitioner was wearing a black hooded sweatshirt and Sullivan was attired in "all white." (*Id.*, PageID.363-65). Anderson then observed a man wearing a black hooded sweatshirt fire a weapon at the driver's side of Ellis' vehicle. (*Id.*, PageId.362).

**Essence Bates**

On the evening of January 1, 2016, Bates was hanging out with Petitioner at the Red Roof Inn. (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.386-87). Later that evening, Bates asked Deshontae Ellis to pick up her and Tyshaun Anderson. (*Id.*, PageId.387-91). Ellis arrived shortly thereafter, along with Tory Cooks and Nichael Todd. (*Id.*, PageId.391-92). Ellis then drove to Applebee's "to

pick some girl up." (*Id.*, PageId.392-93).   Anderson subsequently asked Ellis to
drive her back to the Red Roof Inn.   (*Id.*, PageID.393).

After arriving back at the Red Roof Inn, Anderson exited the vehicle and began
fighting the girl they picked up at Applebee's.   (*Id.*, PageID.394).   Bates tried,
without success, to break up the fight after which Petitioner and Glendon Sullivan
approached Ellis' vehicle.   (*Id.*, PageID.394-95).   Petitioner was carrying a gun.
(*Id.*, PageID.395).   Petitioner approached Ellis and began hitting him.   (*Id.*,
PageID.395-97).   Petitioner then shot Ellis while standing "right next to him."   (*Id.*,
PageID.397-98).   Petitioner later told Bates "not to tell on him."   (*Id.*, PageID.401,
412-13).

**Glendon Sullivan**

On the evening of January 1, 2016, Sullivan was hanging out with Petitioner
at an apartment complex.   (ECF No. 5-5, Trial Transcript, September 28, 2016,
PageID.4194-21).   At some point in the evening, Petitioner was involved in a
"confrontation" with a man named Jacob.   (*Id.*, PageID.421-22).   It began as a "fist
fight," but escalated to a situation in which somebody brandished a gun at which
point Sullivan "broke it up."[2]   (*Id.*, PageID.421-23).

---

2 The jury was shown a video recording of this incident.   This video is not part of the
record before this Court.   It is unclear from Sullivan's testimony whether Petitioner
or Jacob brandished the gun in question.   In his brief before the Michigan Court of
Appeals, Petitioner conceded that he was, in fact, the person in possession of the
firearm.   (ECF No. 5-8,PageID.656).

A short time later, Petitioner and Sullivan went to the Red Roof Inn where they were "watching TV, ordering food and hanging out." (*Id.*, PageID.423). There were three guns in Petitioner's room, a .32 caliber revolver and two .38 caliber revolvers. (*Id.*, PageID.423-24). At some point that evening, Sullivan received one or more text messages from Essence Bates and/or Tyshaun Anderson. (*Id.*, PageID.425-26). Sullivan learned that Bates and Anderson were planning on fighting another girl who was riding in a car with them. (*Id.*, PageID.426). Another message informed Sullivan that he should "come out" because Bates and Anderson had almost arrived at the Red Roof Inn. (*Id.*).

Sullivan responded by grabbing a .38 caliber revolver and going outside. (*Id.*, PageID.426-27). Sullivan was unsure if Petitioner grabbed a gun before exiting the room. (*Id.*, PageID.427). Sullivan and Petitioner then proceeded "towards the car."[3] (*Id.*, PageID.427-28). Sullivan approached the passenger side of the vehicle and pointed his gun at him. (*Id.*, PageID.428-29). Sullivan told the passenger not to move and then began hitting him through the open window. (*Id.*, PageID.429). Sullivan then heard a gunshot. (*Id.*). Sullivan did not see who fired this shot nor did he know where Petitioner was standing when this shot was fired. (*Id.*,

---

3 The prosecution introduced, during Sullivan's direct examination, video evidence recovered from the Red Roof Inn surveillance cameras that apparently depicted Sullivan and Petitioner approaching the vehicle in question. This evidence is not part of the record submitted to this Court.

PageID.429-31).    During this encounter, Petitioner was wearing a black sweatshirt with "Eastside Poppers" written on it.    (*Id.*, PageID.433, 438-39).

**William Sparrow**

As of January 1, 2016, Sparrow was employed as a Detective Sergeant with the Kalamazoo County Sheriff's Department.    (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.455-56).    Following the killing of Deshontae Ellis, Sparrow met with Amanda Kuhens to review footage of the incident recorded by the Red Roof Inn security cameras.    (*Id.*, PageID.456).    Based on his review of the relevant footage, including "the moment when the shooting took place," Sparrow identified Petitioner as the person responsible for killing Ellis.    (*Id.*, PageID.456-59).

**Jim Vanzile**

As of January 2, 2016, Vanzile was employed as a Detective Sergeant with the Kalamazoo County Sheriff's Department.    (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.462).    Early that morning, Vanzile was assigned to investigate a shooting at the Red Roof Inn.    (*Id.*, PageID.462-63).    After investigating the scene and speaking with people present when the killing occurred, Vanzile determined that Petitioner had committed the killing.    (*Id.*, PageID.463-66).

Petitioner was arrested later that morning and questioned by Vanzile.    (*Id.*, PageID.466-67).    Petitioner denied involvement in the killing and instead insisted that he had been at synagogue the previous evening.    (*Id.*, PageID.467).    Petitioner maintained this position even after being informed that video surveillance evidence established his presence at the Red Roof Inn at the time of the killing.    (*Id.*).

**Marty Johnson**

As of January 2, 2016, Johnson was employed as a crime scene investigator. (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.472-74).    Early that morning, Johnson supervised the forensic investigation at the Red Roof Inn.    (*Id.*, PageID.474).    A search of the vehicle in which Deshontae Ellis was located revealed a projectile consistent with having been fired from a .38 caliber firearm.    (*Id.*, PageID.474-77).    Johnson determined that the fatal projectile was fired from the driver's side of the vehicle toward the inside of the vehicle.    (*Id.*, PageID.478-79).

Johnson discovered no other evidence of a gunshot within Ellis' vehicle.    (*Id.*, PAgeID.479).

**David Johnson**

As of July 29, 2016, Johnson was employed as a Kalamazoo County Deputy Sheriff.    (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.489-90).    On this date, Johnson interviewed Glendon Sullivan.    (*Id.*, PageID.490).    During this interview, Sullivan stated that following the killing of Deshontae Ellis, he gave his gun to Theo Fain who later told Sullivan that he "lost" the weapon.    (*Id.*, PageID.490-91).

**Erik Stark**

Stark, a Kalamazoo County Deputy Sheriff, participated in a search of Glendon Sullivan's residence.    (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.493-94).    This search revealed a spent shell casing from a .38 caliber weapon as well as "live ammunition" of three different sizes:.32 caliber, .38 caliber, and 9 mm. (*Id.*, PageID.494).

**Joyce DeJong**

DeJong, at the time the Kalamazoo County Medical Examiner, performed the autopsy of Deshontae Ellis.    (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.496-98).    DeJong determined that Ellis died as the result of a single gunshot wound to the chest.    (*Id.*, PageID.498-507).    DeJong further concluded, from the

location of the entry and exit wounds, that Ellis was "turned away" from his assailant when the fatal shot was fired.   (*Id.*).

Following the presentation of evidence,[4] the jury found Petitioner guilty of first-degree murder and possession of a firearm during the commission of a felony. (ECF No. 5-6, Trial Transcript, September 29, 2016, PageID.589).   Petitioner was sentenced to serve life in prison without the possibility of parole on the murder conviction and a consecutive sentence of two years on the firearm conviction.   (ECF No. 5-7, Sentencing Transcript, October 31, 2016, PageID.613-14).

Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

> I.     Mr. Ben-Yaisrael was denied the due process right to a fair trial by the admission of irrelevant evidence that he was involved in another altercation earlier in the day with another person when such evidence had nothing to do with the shooting of Mr. Ellis.
>
> II.    The evidence was insufficient to sustain Mr. Ben-Yaisrael's convictions in the absence of proof beyond a reasonable doubt that Mr. Ben-Yaisrael shot the victim and it would be a denial of due process and a miscarriage of justice to allow Mr. Ben-Yaisrael's convictions to stand.

---

4 The jury also heard very brief testimony from Brandon Kelley and Charles Williams, both of whom were housed in the Kalamazoo County Jail contemporaneously with Petitioner.   Kelley and Williams testified about a letter that an unidentified person attempted, without success, to mail to someone outside the jail.   (ECF No. 5-5, Trial Transcript, September 28, 2016, PageID.511-19).   It is unclear from the testimony of these witnesses, however, who wrote this letter.   While the letter, the contents of which presumably identify the author, was introduced as an exhibit at trial, the letter is not part of the record before this Court.

11

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Ben-Yaisrael*, 2018 WL 662269 (Mich. Ct. App., Feb. 1, 2018). Raising the same issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Ben_Yaisrael*, 913 N.W.2d 329 (Mich. 2018). Petitioner now moves for habeas relief in this Court asserting the two claims identified above.

## STANDARD OF REVIEW

Ben-Yaisrael's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet."    *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result."    *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).    A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.    Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.    *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."    *Ayers*, 623 F.3d at 308.    Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."    *Ibid.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein.   This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"   *Harrington v. Richter*, 562 U.S. 86, 100 (2011).   Instead, if a state court rejects a federal claim, a federal habeas court "*must presume that the federal claim was adjudicated on the merits.*"   *Johnson v. Williams*, 568 U.S. 289, 301 (2013).   If this presumption is overcome, however, the Court reviews the matter de novo.   *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## ANALYSIS

### I.    Evidentiary Claim

As noted above, Glendon Sullivan testified that on the evening of January 1, 2016, prior to the events that resulted in the death of Deshontae Ellis, Petitioner participated in a fight with a man.   Sullivan testified that he broke up this fight once a firearm was brandished.   Petitioner argues that this evidence was admitted in violation of his constitutional right to a fair trial.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding.   *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).   Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's

14

verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).   This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error.   *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).   Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Ibid.*   In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not "require a perfect trial," *Clemmons*, 34 F.3d at 358, and, moreover, courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512.   State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Ibid.*   As is well recognized, however, the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh*, 329 F.3d at 512-13 ("there is no clearly established Supreme

15

Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence").

As the Sixth Circuit has recognized, to obtain habeas relief based on an allegedly improper evidentiary ruling, Petitioner must identify "a Supreme Court case establishing a due process right with regard to the *specific kind of evidence* at issue." *Stewart v. Winn*, 967 F,3d 534, 538 (6th Cir. 2020). In the absence of Supreme Court authority holding that the admission of evidence of prior bad acts violates the Constitution, laws, or treaties of the United States, Petitioner is not entitled to habeas relief. *Bugh*, 329 F.3d at 512-13; *Winn*, 967 F.3d at 538. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.   Sufficiency of the Evidence

Petitioner argues that the prosecution presented insufficient evidence to support his convictions. Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Petitioner was charged with open murder and convicted of first-degree murder. The elements of this offense are: (1) the intentional killing of a human being (2) with premeditation and deliberation. *See People v. Gamet*, 2016 WL 555850 at *6 (Mich. Ct. App., Feb. 11, 2016). Intent "may be inferred from any facts in evidence" and premeditation and deliberation likewise "may be inferred from the circumstances surrounding the killing." *Ibid.* Premeditation "cannot be found where a defendant acts on a sudden impulse," but rather "may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a 'second look' at their actions." *People v. Walker*, 948 N.W.2d 122, 126-27 (Mich. Ct. App. 2019). Petitioner was also convicted of possession of a firearm during the commission of a felony. The elements of this crime are: (1) possession of a firearm (2) during the commission of, or the attempt to commit, a felony. *See People v. O'Leary*, 2003 WL 22443292 at *1 (Mich. Ct. App., Oct. 28, 2003).

17

Glendon Sullivan testified that prior to the incident in question, he was hanging out with Petitioner when he was informed that Essence Bates and Tyshaun Anderson were in route to the Red Roof Inn where they were planning on fighting Lakaria Washington. Bates and/or Anderson requested that Sullivan "come out" prior to their arrival. Sullivan agreed and he and Petitioner went outside and approached Deshontae Ellis' vehicle when it arrived. Bates positively identified Petitioner as the man who subsequently shot Ellis. Sullivan testified that Petitioner was wearing a black sweatshirt with "Eastside Poppers" written on it. Nichael Todd testified that immediately prior to Ellis' killing, a man wearing an "Eastside Poppers" sweatshirt was brandishing a gun. Anderson testified that a man wearing a black sweatshirt fired a gun at the driver's side of Ellis' vehicle.

Viewing this evidence in a light most favorable to the prosecution, a reasonable juror could conclude that Petitioner intentionally killed Deshontae Ellis with premeditation and deliberation. A reasonable juror could further conclude that Petitioner possessed a firearm during the commission of a felony. The Michigan Court of Appeals denied Petitioner's sufficiency of the evidence claims. This determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, the court's decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim presents no basis for habeas relief.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Ben-Yaisrael's petition for writ of habeas corpus be denied.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 11, 2021                    /s/ Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge

19